IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRAD RICHARD BALLANTYNE; JANE
DOE, guardian ad litem for A.B., I.B., and
M.B., minor children,

        Plaintiffs,

        v.

JERI TAYLOR; CORRECTIONAL
OFFICER MAYNARD, CORPORAL
PANTHER; JEREMY NOFZIGER; and
JOHN DOES 1-50,

        Defendants.

Case No. 6:15-cv-00793-MC

OPINION AND ORDER

MCSHANE, Judge:

        Plaintiffs Brad Ballantyne and his three minor children bring this 42 U.S.C. § 1983 action against various officers of the Oregon Department of Corrections. Plaintiffs allege defendants violated their rights of freedom of association and right to maintain familial relationships under the First and Fourteenth Amendments. Because each individually named defendant is entitled to

1 – OPINION AND ORDER

qualified immunity, defendants' motion for summary judgment, ECF No. 8, is GRANTED. Plaintiffs' motion to continue summary judgment and allow for discovery, ECF No. 19, is DENIED.

## BACKGROUND

Plaintiff Brad Ballantyne is an inmate within the Oregon Department of Corrections. Ballantyne was allowed contact visits with his three children, ranging in age from four to seven. On May 17, 2013, defendant Gail Maynard, a Correctional Officer, observed Ballantyne playing with his children. Concerned that Ballantyne was inappropriately touching, fondling, and kissing his daughters, Maynard asked Defendant Stephen Panther, a Corporal, to pull video of the playroom. Maynard and Panther proceeded to watch video of several different days of visits between Ballantyne and his daughters. Maynard then prepared and submitted a misconduct report to her supervisors. In addition to helping Maynard prepare the misconduct report, Panther prepared an interoffice memo. Neither Maynard nor Panther had any further involvement in the matter.

On May 24, 2013, Ballantyne received notice of a formal hearing regarding charges of major rules violations for Sexual Assault and Disobedience of an Order I. Department of Corrections Rule of Misconduct 2.20 states, "An inmate commits Sexual Assault if he/she engages in non-consensual sexual activity with another person or when force is used or when the person is unable to consent because of age or incapacitation." "Sexual Activity" is defined as, "Sexual contact including, but not limited to sexual intercourse, kissing, fondling, and/or manipulation of the genitalia, buttocks, and breasts of another person, or of oneself, in a manner which produces or is intended to produce sexual stimulation or gratification." OAR 291-127-0210(23).

2 – OPINION AND ORDER

Department of Corrections Rule of Misconduct 4.01 states, "An inmate commits Disobedience of an Order I if he/she overtly refuses to promptly, or in a timely manner, comply with a valid order, which creates a threat to the safety, security, or orderly operation of the facility." OAR 291-105-0015(4)(a).

Ballantyne denied committing Sexual Abuse I, but admitted disobeying Maynard's order that he not build a fort in the playroom. The disciplinary hearing began on June 4, 2013, but was delayed pending the results of the investigation of the Oregon State Police and to allow Ballantyne the opportunity to take a polygraph examination. At the conclusion of its investigation, the Oregon State Police determined Ballantyne had committed no crime.

On September 19, 2013, the disciplinary hearing reconvened. Defendant Jeremy Nofziger is the Correctional Hearings Officer who presided over the hearing. Nofziger reviewed the tapes and reports with Ballantyne. Ballantyne explained that he came from an affectionate family and did not believe he did anything inappropriate. Ballantyne also stated he had never been warned about any touching before receiving notice of the charge. Ballantyne denied touching his children with any sexual intent. Nofziger found Ballantyne violated Rule 2.20 Sexual Assault disobedience of an order. Nofziger recommended a sanction of 180 days visitation rights, and disciplinary segregation for 120 days. Nofziger's recommendation was consistent with the sanctions available under the Department of Corrections Major Grid Violation and Administrative Rules.

After the hearing, Ballantyne was transferred from the Oregon State Penitentiary to the Eastern Oregon Correctional Institution (EOCI). Defendant Jeri Taylor is the Superintendent of EOCI. Other than being named a party in this action, Taylor has had no contact or

communications with Ballantyne. Taylor did not participate in the hearing or have any involvement in the decision to terminate Ballantyne's visitation privileges.

As noted, Ballantyne brings this action alleging defendants violated his First Amendment right of Freedom of Association and his Fourteenth Amendment right to maintain familial relationships. While Ballantyne does not bring a procedural due process claim, he essentially argues that Nofziger's findings were arbitrary.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

Ballantyne admits he cannot present an issue of fact at this stage. Ballantyne moves to defer summary judgment to allow time to conduct discovery. ECF No. 19. Rule 56(d) states:

> If a nonmovant shows by affidavit of declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

>  (1) defer considering the motion or deny it;
>
>  (2) allow time to obtain affidavits or declarations or to take discovery; or
>
>  (3) issue any other appropriate order.

Ballantyne cites *Klingele v. Eikenberry*, 849 F.2d 409, 412 (9th Cir. 1988) in support of his request to allow discovery under rule 56(d). *Klingele*, however, specifically states that the burden is on the party moving for additional discovery under rule 56 to show what specific, material facts would be discovered with additional discovery. 849 F.2d at 412. The closest Ballantyne gets to specifics comes at the end of his briefing, when he states, "At this juncture, it becomes even more critical that Plaintiff be allowed to proceed to discovery, and be allowed the opportunity to find and join the most proper party whom is enforcing this unconstitutional policy. Defendant should not be allowed to play the departmental version of 'hide the ball,' and avoid discovery of the ultimate policy enforcer." Resp., 19; ECF No. 16.

As explained below, however, these defendants are entitled to qualified immunity. The Supreme Court has emphasized that questions surrounding qualified immunity shall be determined "at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, at 1199 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). Qualified immunity shields officials not only from standing trial, "but also to avoid the burdens of 'such pretrial matters as discovery.'" *Id.* (quoting *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996)). In other words, qualified immunity is appropriate here, and Ballantyne may not avoid qualified immunity as to these defendants simply because he does not yet know who to sue.

"The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

5 – OPINION AND ORDER

known.'" *Dunn*, 621 F.3d at 1198-99 (9th Cir. 2010) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Courts shall resolve qualified immunity questions "at the earliest possible stage in litigation." *Id.* at 1199 (quoting *Harlow v. Bryant*, 502 U.S. 224, 227 (1991)). In determining if an official is entitled to qualified immunity, courts look at two issues: (1) whether the plaintiff alleged facts establishing the violation of a constitutional right; and (2) "whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 121 (2001)). While the first prong is a factual inquiry, the second prong is a question of law. *Id.*

    Ballantyne fails to establish either prong. As noted by defendants:

> The U.S. Supreme Court has held that "state officials are not subject to suit under section 1983 unless they play an affirmative part in the alleged deprivation of constitutional rights." *Rizzo v. Goode*, 423 U.S. 362, 377, 46 L. Ed. 2d 561, 96 S. Ct. 598 (1976); *king v. Atiyeh*, 814 F.3d 565, 568 (9th Cir. 1987). Additionally, "[a] plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights. Liability under § 1983 must be based on the personal involvement of the defendant." *Barran v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998): *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)

Reply, 2.

    The allegations regarding these individual defendants are far too attenuated to support an action under § 1983. As discussed above, Maynard and Panther simply viewed the tapes and wrote a report to their supervisors laying out their concerns. They played no role in the hearing or in imposing any discipline against Ballantyne. Taylor has never met Ballantyne. She is named in this action solely because she is the Superintendent of EOCI. Like Maynard and Panther, Taylor played no part in the hearing and imposed no discipline on Ballantyne.

6 – OPINION AND ORDER

The "personal involvement" question is closer with regard to Nofziger, who presided over the disciplinary hearing. Nofziger, however, is clearly entitled to qualified immunity under the second prong of that analysis. The second prong of a qualified immunity analysis is "whether the right is clearly established such that a reasonable government official would have known that 'his conduct was unlawful in the situation he confronted.'" *Dunn*, 621 F.3d at 1199-1200 (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). I must determine whether "the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful. *Id.* at 1200 (quoting *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1137 (9th Cir. 2003)). Here, the right at issue is an inmate's right to family visits.

*Dunn*, a Ninth Circuit case from 2010, squarely addressed this issue. In 2002, California prison officials temporarily prohibited Dunn from receiving visits from his minor children after Dunn engaged in an explicit telephone conversation with his wife while his child was listening in. Like Ballantyne, Dunn brought freedom of association claims under the First and Fourteenth Amendments. Reversing the district court, the Ninth Circuit framed the question as whether "a reasonable prison official could have believed that terminating Dunn's right to receive visits from his children was lawful, in light of clearly established law and the information he possessed. *Id.* at 1201.

The court then looked at Supreme Court and Ninth Circuit precedent at the time officials denied Dunn visits. Those cases "clearly established that prisoners do not enjoy an absolute right to receive visits while incarcerated, even from family members." *Id.* The court discussed the 2003 Supreme Court decision in *Overton v. Bazzetta*, 539 U.S. 126. In *Overton*, the Court noted that prison required inmates to lose some rights, and that "freedom of association is among the rights least compatible with incarceration." *Id.* at 131. The *Dunn* court noted *Overton's*

7 – OPINION AND ORDER

discussion of the "substantial deference" courts must give prison officials in determining the proper administration of prisons.

In determining the officials were entitled to qualified immunity, the court noted that Dunn challenged—as Ballantyne does here—the specific application of those prison regulations against him, as opposed to any facial challenge to the regulations. *Dunn*, 621 F.3d at 1203. The court pointed out that Dunn's defense to the charge—that he did not know his child was on the line—was not actually a defense to the charge. There was no dispute that a minor overheard the explicit conversation. Dunn argued he did not intend to violate the regulation.

Here, Ballantyne essentially argues he did not touch his children with the intent of producing any sexual gratification. But the incidents are caught on tape and there is no dispute that Ballantyne did touch and kiss his children, often while rubbing their bottoms. Ballantyne is simply arguing he lacked intent.

*Dunn* bars Ballantyne's claims. There, the court explained that qualified immunity "gives ample room for mistaken judgments." *Id.* at 1204 (quoting *Hunter*, 502 U.S. at 229). The court cited cases discussing that "the purpose" of qualified immunity recognizes that holding officials liable for honest mistakes "might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Id.* (quoting *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009)). Considering the incidents are all on tape, Ballantyne only argues that Nofziger erred in evaluating Ballantyne's intent. But even assuming Nofziger erred in finding Ballantyne intended to produce sexual gratification when touching his children, that is a reasonable mistake and one that is protected under qualified immunity. Holding Nofziger liable for a mistaken judgment here would paralyze hearings officers throughout Oregon. Instead of making the findings and conclusions required for the

8 – OPINION AND ORDER

successful administration of a prison, hearings officers would have the threat of § 1983 liability hanging over every disciplinary hearing. Courts must give substantial deference to prison officials. Here, while the video does not mandate a finding that Ballantyne touched his children with the intent of producing sexual gratification, it certainly supports Nofziger's findings.

## CONCLUSION

Because the individually named defendants are entitled to qualified immunity, defendants' motion for summary judgment, ECF No. 8, is GRANTED. Plaintiffs' motion to allow discovery, ECF No. 19, is DENIED.

IT IS SO ORDERED.

DATED this 29th day of December, 2015.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge